*Court of Common Pleas, Dauphin County, March 28th, 1868.*

## SEAL v. THE NORTHERN CENTRAL RAILWAY.

An injunction will not be granted to restrain a railroad company from the use of land taken by it some fifteen years before the filing of the bill, and used continuously afterward, even though the land belonged to a feme covert, the company had neither paid for it nor tendered a bond to secure the payment of the damages.

Although under such circumstances, a continued use of the land may be a nuisance, yet there has been too great laches on the part of the plaintiff, nor does her coverture remove the estoppel.

The plaintiff has an adequate remedy at law by ejectment, and in such case an injunction will not be allowed.

BY THE COURT.—The facts disclosed in the bill and answer present the following case:

The plaintiff's title to the land, on which it is complained that the defendant has intruded, commenced prior to 1836, when she obtained possession on the death of her father, who was tenant by the curtesy. Partition was made between herself and brother in the year 1849, of the whole tract. This portion fell to her share. She married William J. Seal in 1845, and she and her husband resided together on the premises until his death, in May, 1867. In 1853, the defendant by its engineers and agents entered upon the premises, took possession of some two acres of ground designated, built a dam on a small watercourse, laid pipes therefrom to carry water to a station to supply their locomotive engines, and has continued in possession ever since.

The road was completed in the year 1856, is one of the great thoroughfares of the country, and it is averred that this water-station is very essential for its use.

The plaintiff states that the entry on the land was without any license, or bond given to secure the damages, as required by law.

[Seal *v.* The Northern Central Railway.]

The defendant avers its belief that a license to enter and hold was obtained, but owing to a change of its officers, the same cannot be established at this time, on so short notice; and says that it has long held the peaceable and undisturbed possession of the premises, without any claim for damages, before the 18th day of December, 1867. The plaintiff asks for a special injunction, on the ground of irreparable injury. The defendant by its counsel presents the act of Assembly of April 7th, 1866, regulating railroad companies, as a bar to the plaintiff's claim, on account of the lapse of time. The law bars all suits for damages for right of way, or use and occupancy of land, by railroad companies, for the use of their railroads, unless an action shall be brought within five years of the time the land is entered upon, and within three years after the road is in operation. This would clearly cover the present case, but for the proviso, which gives to any person who would be sooner barred by the act, two years from the date thereof to proceed and prevent the bar. The plaintiff has filed her bill within two years from the passage of the act, her claim, therefore, does not come within it. Is this a proper case for equitable intervention? And is the plaintiff entitled to the remedy asked,—a preliminary injunction? It is very clear that it is not the legal method of recovering her land, wrongfully taken, as is complained. That can readily be effected at law by an action of ejectment. There is no occasion to ask for the interposition of a court of equity. But it is said that the taking in the present case was without color of authority under the charter of this corporation, as no contract was made with the owner for a release of damages, and no bond filed to cover them, as required by law. Taking this for granted, it proves that the defendant, in entering on the premises, was a trespasser, could have been sued for the trespass, or restrained by injunction from committing it. But as fifteen years have run around since it occurred, the defendant being all of that time in the peaceable and undisturbed possession of the premises, holding adversely to the plaintiff and all of the world, it can no longer be treated as a trespasser, but must first be turned out by an action of ejectment, and then sued for the mesne profits. The entry which commenced by trespass has ripened into an adverse possession, from which the intruder must be removed before the owner can resort to that remedy.

It is said, however, that the wrong here complained of is not a transient, sudden act of trespass, evanescent in its character, but is continuous and abiding, is in the nature of a *nuisance*, which may always be restrained. Courts of equity have, under some circumstances, and to prevent a multiplicity of actions, issued injunctions to prevent a continued act of trespass, and our own courts have exercised a like power where a public right is invaded or disturbed, in order to secure such right. But where an indi-

[Seal *v.* The Northern Central Railway.]

vidual or corporation has taken permanent possession of the property of another, and been suffered for a long time to retain it, we are not aware of any case in which equity has interfered by injunction, to restrain the act, or restore the possession. In all of the cases cited, where the right about to be invaded was of a private nature, the aid of equity was asked before the act was done. It was because it was threatened and about to be commenced, or actually commenced but not consummated, that equity interfered. Where there is adequate remedy at law, equity will not interfere (1 Grant, 412). The act of Assembly gave express power to proceed in equity to ascertain the right, recover possession, and call for an account of certain coal mines, or rather undeveloped coal rights. Yet the Supreme Court held that the law was in violation of the Constitution, because it was a corporeal right, to recover which the party would support an ejectment, and the legislature could not take from the defendant the right of trial by jury (6 Wright, 488). Here the plaintiff's property is actually in the defendant's possession, without right, as she says in her bill, and most clearly she has ample remedy at law, if anywhere.

In many of the cases reported, equity has interfered to restrain acts of nuisance against the property of others, as obstructing ancient lights, or opening lights to overlook the property of another; one man diverting water from his land or house, and casting it upon that of his neighbor, digging so near his line as to endanger the foundation of another's wall, or overflowing his neighbor's land. Here there was another remedy. Yet that in equity was preventive, and could be used when the act was *about to be done.* So of trespasses about to be committed. It is often to the interest of all parties, and of the community, to have those rights determined in advance, before there shall be large expenditures of money, and hence the aid of equity is invoked. It has often been said that an injunction is the strong arm of equity, and ought never to be extended in a doubtful case, except one where great injury will be sustained, and courts of law cannot afford adequate or commensurate remedy in damages; the right must be clear, and the injury impending or threatened of a character irreparable (Baldwin, R. 218). It is only granted for the purpose of preserving the property until a legal decision of the right can be had; and to entitle the plaintiff to such an interference, pending the decision of his legal title, he must show not only a strong *prima facie* case, but that he has been guilty of no acquiescence or delay in asserting his right (2 Eden on Injunctions, by Waterman, note, p. 259, 2). There is nothing which will call in the aid of a court of chancery but a pure equity and reasonable diligence.

The court will also take into consideration the injury or inconvenience to the defendant, and the expense to which it would put

him in case of his being in the right, and fairly weigh and balance the one against the other (2 Eden, *ut supra*).

There has certainly been long acquiescence and unreasonable lying by in the present case. There must have been an original grant of the land, or license to use the water, or the plaintiff and her husband looked on for a period of fifteen years, and saw the expenditure of money by the defendant in preparation for its use, and the constant occupancy of the land for that period, without protest, objection, or any notice of their claim. This is such act as equity will not countenance. But it is said the plaintiff during all of that time was a feme covert—not accountable for the acquiescence or delay of her husband. Courts of equity will not hold either infancy or coverture any excuse for silence when the party ought to speak, and such silence operates as a fraud upon others (1 Story's Equity, s. 385). Fonblanque (Book I, ch. 3, s. 4) declares " neither infancy nor coverture shall be any excuse in such a case." (See also 9 Mod. 33; 2 Eq. C. abd. 489; 1 Bro. Ch. R. 353.)

Although courts of law formerly looked upon those laboring under legal disabilities as powerless to act, and not accountable for their silence, yet they never were so treated in courts of equity, if competent in point of fact, and relief has been denied them when it would operate as a fraud upon others, and the infant or feme covert was left to their remedy at law.

Where a party has been guilty of great laches and connivance in suffering another to erect a nuisance, the court has refused to interpose (2 Eden on Injunctions, by Waterman, 274).

There is another ground of objection to the plaintiff's bill. We are asked to make a decree which will materially incommode the proper management of a great public work,—the running of the cars on the defendant's road. It is said that this water-station is essential to its operation, and we have many cases where equity would not lend its aid to stop the carrying on of a large manufacturing establishment (Attorney-General *v.* Claver, cited in 2 Eden, p. 274). And certainly not before the right was established at law. We refused, partly on the ground of public inconvenience, in the case of Heilman *v.* The Union Canal Co. (1 Wright, 100), on a full and careful examination of all the authorities, though that part of our opinion is not noticed in the Supreme Court. That court within the last few weeks refused to restrain a large manufacturing establishment in the use of bituminous coal in the city of Philadelphia, although complained of as a nuisance, by rendering the private residences in the neighborhood almost uninhabitable, the court considering the factory of great general utility. Equity will very carefully weigh the advantages and disadvantages to the community and individuals, before interposing the power of the court by injunction, and where the work

[Bay & Brother *v.* Thompson et al.]

erected and in use is highly beneficial to the *many*, will leave the *few* complainants to seek their remedy at law.

As we have already said, the plaintiff can try her right to the land she claims in an action of ejectment; and should she recover, turn the defendant out of possession.  It can then proceed under the act of Assembly to have the property set apart for the use of its road, and pay its value.

The injunction is refused, and bill dismissed, a decree to be drawn up to that effect.

*Alricks, for plaintiff.*

*Kunkel and Herr, for defendant.*